IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WISCONSIN MASONS 401(k) FUND,
BILL BONLENDER, and
BRICKLAYERS AND ALLIED CRAFTWORKERS
DISTRICT COUNCIL OF WISCONSIN,

                    Plaintiffs,

  v.

KATHLEEN M. FROODE,

                    Defendant.

OPINION & ORDER

16-cv-676-jdp

---

Plaintiffs (a labor organization, employee benefit plan, and the plan's trustee and fiduciary) bring claims against defendant Kathleen M. Froode for violations of the Employee Retirement Income Security Act (ERISA), civil theft, and conversion. Dkt. 1. Plaintiffs move for summary judgment. Dkt. 19. The court will grant plaintiffs' motion on the civil theft claim, deny the motion on the remaining claims, and notify plaintiffs that it intends to resolve the remaining claims as a matter of law before trial.

PRELIMINARY MATTERS

Froode appears pro se. The court extended Froode's summary judgment response deadline based on her representation that she was hiring counsel, *see* Dkt. 29, but despite the extension, she filed her response on the original deadline, and no counsel has appeared on her behalf. At the court's prompting, Froode indicated that she was "still in the process of securing local pro bono counsel that can assist [her] at summary judgment." Dkt. 40. The court will construe Froode's response as a motion for a second extension of her response deadline and

deny it. The court has already allowed Froode a second chance at her response brief, *see* Dkt. 27, which she took advantage of. Because of the second chance and several extensions, time is now running out to issue a summary judgment opinion before the parties' pretrial filings are due on April 20. Froode has had sufficient time to prepare her response and to attempt to obtain counsel, so the court will not further delay its consideration of plaintiffs' summary judgment motion.

UNDISPUTED FACTS

The following facts are material and, except where noted, undisputed.

Plaintiff Wisconsin Masons 401(k) Fund (the fund) is an employee benefit plan affiliated with plaintiff Bricklayers and Allied Craftworkers District Council of Wisconsin (the union), a union that represents construction workers. Plaintiff Bill Bonlender is a trustee and fiduciary of the fund. Defendant Kathleen M. Froode is the sole member and president of Masonry Specialists II, LLC, a now-defunct construction company.

In 2007 and 2008, Masonry Specialists entered into collective bargaining agreements (CBAs) with the union. The CBAs were in force through at least May 31, 2014. Under the CBAs, Masonry Specialists was to deduct "hourly working dues" from each employee's wages and remit them monthly to the union, no later than "the month following the month during which the deductions were made." Dkt. 21-2, § 21.1. Masonry Specialists was also to remit to the fund monthly 401(k) contributions agreed to by each employee. These 401(k) contributions were to be deposited "at the end of each month in which the work was performed, but not later than the fifteenth day of the following month, after which time the payments will be considered delinquent." *Id.* § 17.7. In the case of delinquent payments to the fund, the CBAs

allowed for a 20 percent assessment of the delinquent payments "as liquidated damages" and interest of 1.5 percent per month on the unpaid delinquent balance. *Id.* They also allowed for "reasonable attorney's fees and any other costs and expenses reasonably arising in connection with any collection action." *Id.*

Masonry Specialists generally followed the CBAs' requirements: Froode would deduct dues and 401(k) contributions from employee's wages and remit them to the union and the fund, respectively. But some of the dues that Masonry Specialists deducted in November 2011 through January 2012—specifically, $6,897.84—were never remitted to the union, despite a March 23, 2012 demand for payment. *See* Dkt. 22-1. And between April 2010 through January 2013, some of the 401(k) contributions were paid late, resulting in $420.26 in interest that has not been paid.

ANALYSIS

Plaintiffs move for summary judgment on all of their claims. Summary judgment is appropriate if plaintiffs show that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, Froode must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [her] favor." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

A. **ERISA**

It is undisputed that the CBAs required Masonry Specialist to remit 401(k) contributions to the fund and allowed interest to accrue on any unpaid delinquent balance. Nor is it disputed that Masonry Specialist failed to remit certain 401(k) contributions on time, rendering Masonry Specialist liable to plaintiffs for $420.26 in unpaid interest. But plaintiffs

aren't suing Masonry Specialist for contribution; instead, they have chosen to assert a breach-of-fiduciary-duty claim against Froode individually.

"In every case charging breach of ERISA fiduciary duty, the threshold question is whether the defendant was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). "[A] person is a fiduciary with respect to a plan to the extent [that he or she] exercises any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). (There other definitions of plan fiduciary, but they are inapplicable here.) There is no statutory definition of "plan assets," but a Department of Labor regulation provides,

> [T]he assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102(a)(1). The question here is whether the interest assessed on delinquent 401(k) contributions is a plan asset—if it is, then Froode acted as a fiduciary when she failed to pay that interest.

Plaintiffs point to two district court opinions concluding that a person who exercises discretionary control over a bank account containing delinquent plan contributions is a fiduciary. *See Chao v. Unique Mfg. Co.*, 649 F. Supp. 2d 827, 833—34 (N.D. Ill. 2009); *Cent. Ill. Carpenters Health & Welfare Tr. Fund v. S & S Fashion Floors, Inc.*, 516 F. Supp. 2d 931, 938 (C.D. Ill. 2007). They argue that Froode qualifies as a fiduciary under this definition. But "[i]n assessing whether a person can be held liable for breach of fiduciary duty, a court must ask whether that person is a fiduciary with respect to the particular activity at issue." *Baker v.*

*Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (quoting *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997)); *accord Brooks*, 729 F.3d at 765–66 (explaining that "an ERISA fiduciary does not always 'wear the fiduciary hat,'" so the question is whether the defendant "was acting as a fiduciary when" it took the specific act at issue (quoting *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013))). Here, the activity at issue is not failure to remit delinquent plan contributions, because Froode eventually remitted those contributions. Rather, the activity at issue is Froode's failure to pay the interest assessed on the delinquent balances. That interest is the sole damages that plaintiffs seek.

The court has found no authority for the proposition that an employer has a fiduciary duty to pay contractually assessed interest on delinquent 401(k) contributions. The DOL definition supports the contrary: because interest isn't withheld from employee wages, it isn't a plan asset. That distinction proved dispositive in *S & S Fashion*, which concluded that "unpaid contributions, *actually withheld from wages by the employer*, to which the Funds are legally entitled by the governing documents," are "plan assets" giving rise to fiduciary status but that "amounts due and owing to the Funds that were never withheld by the employer" are not. 516 F. Supp. 2d at 937 (emphasis added). The Tenth Circuit's thorough analysis of this issue also supports this conclusion. *See In re Luna*, 406 F.3d 1192, 1201–08 (10th Cir. 2005). In *Luna*, the question was whether an employer acted as a fiduciary with respect to delinquent "fringe benefit" plan contributions—that is, contributions that were not withheld from employee's wages but paid directly by the employer to the plan. The Tenth Circuit, after reviewing statutory language, the law of trusts, regulatory interpretations, and ERISA case law, concluded that such "a delinquent employer-contributor is merely a debtor, not a fiduciary." *Id.* at 1205.

Against this well-reasoned authority, plaintiffs cite *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645 (7th Cir. 2001), for the proposition that "plan assets" include unpaid interest. But *Gustafson* merely held that "ERISA provides that in a suit for contributions the fund is entitled not only to the contributions but also to interest on them at the interest rate 'provided under the plan.'" *Id.* at 652 (quoting 29 U.S.C. § 1332(g)(2)). That doesn't mean that interest is a plan asset giving rise to fiduciary status.

The court is not persuaded that an employer owes a fiduciary duty to the contractually assessed interest on delinquent 401(k) contributions. So it will deny plaintiffs' motion for summary judgment on the ERISA claim and give plaintiffs notice under Rule 56(f) that it will consider granting summary judgment in Froode's favor on this claim after giving plaintiffs a chance to respond.

**B. Civil theft**

Plaintiffs also assert against Froode a claim of civil theft under Wisconsin Statute sections 895.446 and 943.20. This claim focuses on the $6,897.84 in unpaid union dues. Under section 943.20(1)(b), an individual commits civil theft when she,

> [b]y virtue of his or her office, business or employment, or as trustee or bailee, having possession or custody of money . . . , intentionally uses, transfers, conceals, or retains possession of such money . . . without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner.

When Froode issued paychecks to Masonry Specialists' employees withholding union dues, ownership of the dues transferred from Masonry Specialists to the union. When Froode did not remit the due to the union within the next month, as required by the CBAs, she retained possession of the union dues without authorization. She then used the retained dues, which remained in Masonry Specialists' bank account, to pay for business expenses. Her refusal to

6

remit the dues upon plaintiffs' March 23 demand is prima facie evidence of her intent to convert the funds to her own use. *See id.* So the undisputed facts show that Froode committed civil theft.

Froode's main argument—the only one she explains or supports with evidence—is that she did not *intend* to retain the dues. Masonry Specialists simply didn't have the money to pay them, she argues, because of the financial crisis of 2008: Masonry Specialists was not fully compensated for two of its projects, causing it to default on a loan, which resulted in a 2010 temporary garnishment of its bank accounts, a 2015 asset seizure by the IRS, and finally, dissolution of the company in 2017. The circumstances leading to Masonry Specialists' failure to pay union dues are unfortunate, but they are immaterial to the question whether Froode did not remit dues to the union so that she or Masonry Specialists could use that money for another purpose. Plaintiffs adduce evidence, which Froode does not dispute, that Froode withheld dues, refused to remit them in response to plaintiffs' demand, and then paid other operating expenses from Masonry Specialists' accounts. *See, e.g.*, Dkt. 24 (Froode Dep. 48:13–50:3, 53:9–15). Plaintiffs have established that they are entitled to judgment as a matter of law on Froode's liability under Wisconsin Statute section 943.20(1)(b), and therefore they are entitled to recover $6,897.84 in unpaid dues and treble damages, as allowed under section 895.446(3)(c), for a total of $20,693.52.

## C. Conversion

Plaintiffs assert a common-law conversion claim against Froode in the alternative. Because the court will grant summary judgment in plaintiffs' favor on the civil theft claim, it will deny plaintiffs' motion for summary judgment on the conversion claim and give plaintiffs notice that it intends to dismiss this claim after giving plaintiffs a chance to respond.

7

**D. Judgment independent of the motion**

As discussed above, the court has identified two claims that may be resolved, and that the court intends to resolve, before trial through judgment independent of the motion. Fed. R. Civ. P. 56(f). Specifically, plaintiffs appear to abandon their conversion claim and have failed to establish Froode's liability under ERISA. The court will require plaintiffs to file a brief response indicating whether they intend to pursue the conversion claim and showing through citation to the record that there is a genuine dispute of material fact and that the court should not grant summary judgment against them on the ERISA claim.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment, Dkt. 19, is DENIED as to the ERISA and conversion claims and GRANTED as to the civil theft claim.

2. Plaintiffs must respond to the court's Rule 56(f) notice on the claims identified in this opinion by April 9, 2018, showing why the court should not grant summary judgment against them on these claims.

Entered March 19, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge